IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN SECTION OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KIERON LEE, | ) |
| | ) Case No. _____ |
| PLAINTIFF, | ) |
| | ) **COMPLAINT FOR VIOLATION OF THE** |
| | ) **CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §** |
| | ) **1983, THE AMERICANS WITH** |
| | ) **DISABILITIES ACT, AND SECTION 504** |
| | ) **OF THE REHABILITATION ACT** |
| v. | ) |
| | ) |
| CITY OF MEMPHIS, a Tennessee | ) |
| municipality; and ALEXANDER | ) **JURY TRIAL DEMANDED** |
| ANDERSON, badge number 14299, in his | ) **PURSUANT TO FED. R. CIV. PRO. 38(a)** |
| individual capacity, | ) **& (b)** |
| | ) |
| DEFENDANTS. | ) |

**COMPLAINT**

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff Kieron Lee (hereinafter "Plaintiff"), by and through his designated attorneys, for his Complaint alleges as follows:

**I.**

**NATURE OF THE ACTION**

1. Plaintiff was subjected to multiple civil rights violations at the hands of a group of Memphis Police Department (hereinafter "MPD") officers after he suffered a seizure and entered a postictal state.[1] MPD officers failed to take reasonable and necessary measures to address a

---

[1] The postictal state is the period immediately following a seizure which typically lasts 5-30 minutes but can persist for significantly longer periods of time. It is the time during which the brain "resets" before returning to baseline. It is characterized by, *inter alia*, impaired social functioning, verbal ability, confusion, and poor short-term memory.

visible seizure and strained breathing which Plaintiff suffered while restrained with his hands behind his back. Rather than removing Plaintiff's restraints or relocating those restraints to the front of Plaintiff's body, MPD Officers simply placed Plaintiff on the concrete to suffer his seizure while they awaited response by the Memphis Fire Department (hereinafter "MFP").

2. Those MPD Officers eventually transported Plaintiff to Regional One Health Medical Center ("Regional One"). At Regional One they placed Plaintiff into a wheelchair with his hands stilled restrained behind his back for transport and failed to appropriately secure Plaintiff in the wheelchair during transport which resulted in Plaintiff being dumped out of the wheelchair onto his face.

3. Within Regional One, while still in a postictal state, Plaintiff became confused and argumentative and spit at an officer while his hands were restrained in handcuffs behind his back. Defendant Alexander Anderson (hereinafter "Defendant Anderson"), badge number 14299, struck the restrained and obviously impaired Plaintiff in the face multiple times with a closed fist until the officers intervened, which was recorded on body worn camera footage.

4. This suit is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983") and 1988, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act in order to remedy Defendants' actions in causing Plaintiff to be deprived of his constitutional rights under the Fourteenth Amendment of the United States Constitution.

## II.

## **SUBJECT MATTER JURISDICTION AND VENUE**

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under Sections 1983 and 1988, the Americans with Disability Act, and Section 504 of the Rehabilitation Act.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III.

## THE PARTIES AND PERSONAL JURISDICTION

7. Plaintiff is a resident of Shelby County, Tennessee. At all times relevant to this suit, he was a detainee of the Memphis Police Department and a person with a disability and therefore subject to the protections of the Fourteenth Amendment, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

8. City of Memphis (hereinafter the "City"), is a Tennessee municipality, located in Shelby County, Tennessee, which is recognized by the State of Tennessee as a properly organized and legal municipality, and can be served with process through its Chief Officer, Mayor Jim Strickland, or Chief Legal Officer, Jennifer Sink, at their offices located at 125 North Main Street, Memphis, Tennessee 38103. City of Memphis operates and maintains a law enforcement agency known as the MPD. At all times hereto, the City and its agents acted under color of state law. Under the ADA and Section 504 the City of Memphis is responsible for the acts and omissions of MPD Officers in violation of Plaintiff's rights under the ADA and Section 504.

9. Defendant Anderson, badge number 14299, is or was at all times relevant to this Complaint, a police officer employed with MPD and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Anderson at 170 N. Main Street, Memphis, Tennessee 38103. Defendant Anderson is named in this action in his individual capacity.

## IV.

## **FACTUAL ALLEGATIONS**

10. Plaintiff is a 39-year-old African American man with a diagnosed seizure disorder for which he was receiving and continues to receive treatment.

11. On June 1, 2020, Defendant Anderson detained Plaintiff on suspicion of driving under the influence ("DUI"). Defendant Anderson called MPD Officer David Payment, badge number 6785, to conduct a DUI screening.

12. Plaintiff's entire interaction with police was recorded on either Body Worn Camera (hereinafter "BWC") or patrol vehicle footage. Concurrent with the filing of this Complaint, Plaintiff separately motions this Court for leave to file with the Court via thumb drive the following videos as exhibits which are incorporated herein by reference and alleged to be accurate representations of the events depicted therein:

    (a) Officer Payment's BWC footage is hereto attached as **Exhibit 1**.

    (b) The patrol vehicle camera facing the backseat is attached as **Exhibit 2**.

    (c) Post-Seizure BWC footage is attached as **Exhibit 3**.

    (d) BWC footage beginning at arrival to Regional One is attached hereto as **Exhibit 4**.

    (e) Separate BWC footage post assault by Defendant Anderson is attached hereto as **Exhibit 5**.

13. During Plaintiff's entire initial interaction between initial contact with MPD Officers and being placed in the back seat of the MPD cruiser, Plaintiff was cooperative.[2]

14. While in back seat of the MPD patrol vehicle, Plaintiff attempted to kick the door to get an officer's attention and within ten seconds of beginning to kick the vehicle's door he

---

[2] *See* Exhibit 1

suffered from a visible and distinct seizure.[3] MPD Officers turned flashlights on and pointed them inside the vehicle and clearly viewed Plaintiff suffering a seizure.[4]

15. Police opened the patrol vehicle's door and witnessed Plaintiff's body uncontrollably seizing.[5]

16. MPD Officers dragged Plaintiff out of the backseat by his feet initially and finished pulling him out of the vehicle by his handcuffed arms while he moaned in agony.[6] MPD Officers, recognizing that Plaintiff was suffering—or had just suffered—a seizure, radioed for MFP services to arrive to treat Plaintiff's seizure, clearly indicating they were aware of Plaintiff's disability.

17. Less than a minute after radioing for assistance, MPD Officers are discussing calling MFP to disregard the call and attempting to force Plaintiff to stand, despite him just suffering from a visible seizure and having labored breathing.[7]

18. After determining that Plaintiff was too heavy for them to keep vertical, MPD Officers placed Plaintiff on the concrete and failed to take any action to relocate or release his handcuffs.[8]

19. Rather than provide any assistance to Plaintiff, MPD Officers pulled money out of Plaintiff's pocket and proceeded to count it.[9]

20. Eventually MFP made the scene and Plaintiff was lifted off the concrete to be assessed by MFP responders. At that time Plaintiff had entered a postictal state and there had been a notable change in his demeanor. Plaintiff transitioned from a cooperative individual to a

---

[3] *See* Exhibit 2 beginning at 0:50.
[4] *See Id.* beginning at 1:10.
[5] *See* Exhibit 3 0:51 – 1:30.
[6] *See* Exhibit 2 beginning at 2:20; Exhibit 3 beginning at 1:30.
[7] *See* Exhibit 3 1:40- 2:24.
[8] *See Id.* 2:24 – 8:30.
[9] *See Id.* 3:20 – 9:00.

hostile, delusional, and paranoid individual.[10] Shortly thereafter MFP responders left the scene without transporting Plaintiff to Regional One.

21. Over the next fifteen (15) minutes, Plaintiff's behavior and actions was so erratic that MPD officers request MFP return to the site to re-evaluate Plaintiff after Plaintiff injured his head when he fell on the pavement. Plaintiff's postictal erratic behavior included, but was not limited to, Plaintiff falling face first while his hands are secured behind his back in handcuffs, while no less than six (6) City employees watch Plaintiff and laughed.[11] Eventually MFP again left without transporting Plaintiff to Regional One, despite having already unloaded a stretcher with proper restraint harness to prevent Plaintiff from falling while in transport to Regional One.[12]

22. Instead of properly securing Plaintiff in the stretcher for transport, MPD Officers picked Plaintiff up by his arms and feet and threw him into the back of a squad car for transport to Regional One, while Plaintiff continued to display signs of a postictal state.[13]

23. For some unknown reason upon arrival at Regional One, MPD Officers parked far away from the entrance and opted to place Plaintiff in a wheelchair with his hands secured behind his back in handcuffs without a means of securing Plaintiff to the wheelchair.[14] Plaintiff could be seen visibly slumped over to a degree that was certain to result in his falling out of the wheelchair.[15] Inevitably, a MPD Officer pushed Plaintiff's wheelchair into a curb and dumped Plaintiff face first into the concrete and exclaimed, "Oh Shit!"[16] All this occurred in the presence of no less than four City police officers.

---

[10] *See Id.* 9:00 – end.
[11] *See Id.* 30:15 – 30:50.
[12] *See Id.* 30:50 – end.
[13] *See Id.* 31:05 – end.
[14] *See* Exhibit 4 12:50.
[15] *Id.*
[16] *Id.* 13:20.

24. After arrival inside Regional One and while still in his postictal state, Plaintiff continued to be verbally paranoid and aggressive. Rather than attempt any de-escalation techniques or request the aid of trained medical personnel, Defendant Anderson placed himself immediately in front of Plaintiff. Plaintiff, while handcuffed behind his back and seated in a wheelchair, spit on Defendant Anderson. Defendant Anderson then struck Plaintiff with a closed fist no less than three times squarely in the face.[17]

25. One of the MPD Officers went on to describe the sequence of events that had occurred to Regional One medical staff. This staff member was presumably the Charge Nurse. The officer begins his sequence of events by stating that Plaintiff was just trying not to get in the back of the police car and further falsely stated Plaintiff "faked a seizure, then fell on the ground, and hit his head."[18]

26. Statements and actions by MPD Officers clearly indicate a failure to train on the part of the City as it relates to accommodating the disabilities of arrestees and serious medical conditions, including seizure disorders and evidence deliberate indifference towards those individuals that suffer from disabilities like seizure disorders.

27. In order for this incident to have occurred and for all police officers involved to not have been investigated and punished one of two things must be true, either the City's policies or customs are so woefully constitutionally deficient as to rise to the level of having caused Plaintiff's injuries, or the City's police officers are so inadequately trained in their duties under the 4th and 14th Amendments and the treatment of citizens with disabilities such that this failure to train constitutes a policy or custom that caused Plaintiff's injuries.

28. As a direct and proximate result of the Defendants' unlawful actions, Plaintiff has

---

[17] *Id.* 18:12
[18] *See* Exhibit 5 2:55 – 4:00

7

suffered, *inter alia*, a deprivation of his constitutional rights, physical injury, as well as psychological and emotional trauma.

## VI.
## CAUSES OF ACTION

### COUNT 1 – EXCESSIVE FORCE
### VIOLATION OF 42 U.S.C. § 1983
### (AGAINST DEFENDANT ALEXANDER ANDERSON)

29. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

30. Defendant Anderson used excessive force when he struck Plaintiff in the face with a closed fist multiple times while Plaintiff's hands were secured behind his back in handcuffs. Defendant Anderson's unnecessary, unjustified, and excessive use of force deprived Plaintiff of his fundamental interest in being secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution, as applied to state actors by the Fourteenth Amendment.

31. As alleged above Defendant Anderson acting under color of state law, violated the rights of Plaintiff secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

32. At the moment Defendant Anderson attacked Plaintiff, he lacked justification to apply the amount of force he applied to Plaintiff or, for that matter, to utilize any force at all against Plaintiff. Defendant Anderson subjectively knew that Plaintiff posed no threat to him or to anyone, and that Plaintiff was handcuffed behind his back. Defendant Anderson subjectively knew that there was no justification to use the amount of force that he used on Plaintiff. As a pretrial detainee already in custody, Plaintiff was entitled to protection from excessive force under the Fourteenth Amendment, and no objectively reasonable officer with the information available to Defendant Anderson would have applied any force to Plaintiff let alone the amount

of force he applied to Plaintiff, punching a disabled, handcuffed, man seated in a wheelchair who posed no threat in the face three times.

33. It is clearly established that a detainees should be free from the use of force that is not objectively reasonable.

34. Furthermore, there is undoubtedly a clearly established legal norm precluding the use of physical force against a detainee who has already been subdued and does not present a danger to himself or others. *See Harris v. City of Circleville*¸ 583 F.3d 356 (6th Cir. 2009); *see also Lewis v. Downs*, 774 F.2d 711, 714 (6th Cir. 1985) (holding that beating and kicking restrained suspects who are in the control of the police is "plainly excessive" force). As such, Defendant Anderson is not entitled to qualified immunity.

### COUNT 2 – SUPERVISORY LIABILITY – FAILURE TO TRAIN
### VIOLATION OF 42 U.S.C. § 1983
### (AGAINST THE CITY)

35. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

36. The City failed to provide adequate training and/or supervision to its public safety officers regarding use of force and the appropriate response to serious medical conditions, such as a seizure. The City has a non-delegable duty and responsibility to formulate, oversee, and implement official policies, practices, customs, and procedures to be carried out by its public safety officers and other personnel.

37. On information and belief, Defendant Anderson was not meaningfully disciplined for his conduct indicating a custom of Defendant City of Memphis turning a blind eye to such civil rights violations such that their officers know or reasonably believe that they will not face any significant discipline if they do engage in significant civil rights violations.

38. It is clearly established that a detainees should be free from the use of force that is not objectively reasonable.

39. Furthermore, there is undoubtedly a clearly established legal norm precluding the use of physical force against a detainee who has already been subdued and does not present a danger to himself or others. *See Harris v. City of Circleville*¸ 583 F.3d 356 (6th Cir. 2009); *see also Lewis v. Downs*, 774 F.2d 711, 714 (6th Cir. 1985) (holding that beating and kicking restrained suspects who are in the control of the police is "plainly excessive" force). As such, Defendant Anderson is not entitled to qualified immunity.

40. The staggering amount of BWC footage and incident records in this matter demonstrates that the City's employees are either unaware of clearly established law or are aware that they will not face meaningful consequences if they violate the rights of detainees or citizens with disabilities. This level of legal ignorance on a widespread basis demonstrates that the City has failed to properly train or supervise its employees on fundamental principles regarding use of force and interactions with disabled citizens, as evidenced by the foregoing, especially the fact that only one of the City's employees were disciplined for their actions during this incident.

41. As a direct and proximate consequence of the failure on the part of the City to properly develop, implement, and otherwise devise a policy of adequate training and/or supervision for its public safety officers, Plaintiff was deprived of his statutory and constitutional rights, privileges, and immunities. Properly trained and supervised public safety officers and other personnel would have known not to engage in the acts which resulted in the deprivation of the statutory and constitutional rights of Plaintiff.

42. The failure of the City to provide adequate and proper training and supervision, as evidenced by the actions of so many employees in this matter, and to provide adequate and

proper training and supervision relating to the use of force and interaction with citizens with disabilities is so grossly negligent that it amounted to deliberate indifference and disregard for the civil and constitutional rights of Plaintiff. As a result of the failure to act, train, and/or supervise its public safety officers, the City is liable for damages for the unnecessary and excessive use of force employed against Plaintiff, pursuant to 42 U.S.C. §1983.

### COUNT 3 – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT (AGAINST THE CITY)

43. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

44. "In the ADA, Congress provided [a] broad mandate" to "effectuate its sweeping purpose[ to] ... forbid[] discrimination against disabled individuals in major areas of public life, [including] ... public services ...." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). It is "'a milestone on the path to a more decent, tolerant, progressive society.'" *Id.* (quoting *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 375 (2001) (Kennedy, J., concurring)).

45. The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

46. The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

47. The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of

disability and/or (b) perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. 28 C.F.R. §§ 35.130 (b)(3)(i) & (iii).

48. Plaintiff, as a result of his seizure disorder, is an otherwise qualified individual with a medical condition that substantially limits one or more major life activity, and therefore, is considered to be a person with a disability under Section 504 of the Rehabilitation Act, as amended, and under the ADA. *See* 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

49. The City is a recipient of federal funds and is a public entity within the meaning of the Americans with Disabilities Act ("ADA") and is therefore subject to the ADA and Section 504 of the Rehabilitation Act ("Section 504").

50. Plaintiff was subjected to discrimination on the basis of his disability when he was not provided reasonable accommodations for his seizure disorder including, but not limited to, the release or repositioning of his handcuffed hands during a seizure, and other physically and medically appropriate treatment or transportation for a person who just suffered from a seizure and had entered a postictal state. Plaintiff was further discriminated against when his immediate transportation to Regional One was substantially delayed as described above in response to behavior directly attributable to his seizure disorder. Further, Plaintiff was subjected to direct discrimination on the basis of his disability when Defendant Anderson punched Plaintiff in the face for conduct directly attributable to his neurological state and when he accused Plaintiff of "faking" his seizure thereby impairing the ability of the Regional One medical staff to properly evaluate and treat Plaintiff.

51. Plaintiff was already in police custody and secured when these incidents took

place. While it remains an open question in the Sixth Circuit whether the ADA applies to arrests, there is no reasonable dispute that it applies to the treatment of pretrial detainees. Further, district courts in this circuit have applied the ADA to arrests, and the Sixth Circuit and Supreme Court have declined to address the question. *City of San Francisco v. Sheehan,* 575 U.S. 600 (2015); *Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008); *Walling v. City of Newport*, 2015 U.S. Dist. LEXIS 119561 (E.D. Ky. 2015).

52. The City further discriminates against individuals with disabilities by not sufficiently staffing an appropriate response team for individuals with disabilities or requiring that officers who know that a suspect or arrestee is suffering from a neurological or psychiatric condition actually contact the Crisis Intervention Team for assistance with the arrest. These policies, along with its failure to properly train its officers on the treatment of individuals with disabilities, themselves constitute a failure to comply with the ADA by administering its programs and services in a discriminatory manner such that officers like Defendant Anderson will predictably violate the rights of disabled arrestees and pretrial detainees. The City of Memphis is clearly on notice that its officers arrest individuals with neurological and psychiatric conditions yet has failed provide a mechanism by which their disabilities will be accommodated either during arrests or as pretrial detainees in the custody of MPD officers.

53. The City and its employees excluded individuals with certain disabilities including seizure disorders from equal access to programs and services in available throughout the City in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i).

54. The City and its employees used methods of administration that had the effect of subjecting Plaintiff to discrimination on the basis of disability in violation of 34 C.F.R. § 104.4(b)(4).

55. The City and its employees used methods of administration that had the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the City's programs and services in violation of 34 C.F.R. § 104.4(b)(4).

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each Count of the Complaint and prays for the following relief:

1. Issue service of process and serve the Defendants;

2. Permit Plaintiff leave to amend this Complaint after reasonable discovery;

3. Empanel a jury to try this matter;

4. Award Plaintiff compensatory damages;

5. Award Plaintiff punitive damages against Defendant Anderson;

6. Award Plaintiff his reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

7. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

8. Award pre-and post-judgment interest pursuant to TENN. CODE ANN. § 47-14-123 in an amount according to the proof at trial; and

9. Grant the Plaintiff such further relief as the Court may deem just and proper.

        Respectfully submitted,

        <u>/s/ *Brice M. Timmons*</u>
        Brice M. Timmons (#29582)
        Craig A. Edgington (#38205)
        DONATI LAW, PLLC
        1545 Union Avenue
        Memphis, TN  38104
        (901) 278-1004 (Office)
        (901) 278-3111 (Fax)
        brice@donatilaw.com
        craig@donatilaw.com